UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK F. HAAK,

        Appellant,                                Case No. 1:22-cv-10899

v.                                                  Honorable Thomas L. Ludington
                                                          United States District Judge
JERMAINE MAURICE FRANKLIN, JR.,

        Appellee.
_____/

**OPINION AND ORDER GRANTING APPELLANT'S MOTION FOR JUDICIAL NOTICE, TAKING JUDICIAL NOTICE OF ADJUDICATIVE FACTS, AND REMANDING CASE FOR FURTHER PROCEEDINGS**

In bankruptcy, as in boxing, timing matters. Jermaine Maurice Franklin, Jr., a professional boxer, filed for Chapter 7 bankruptcy six months after this Court determined that, under contract, he was responsible to compensate his former manager, Mark F. Haak, from his prospective earned boxing purse. Haak then filed a motion to dismiss Franklin's bankruptcy petition under 11 U.S.C. § 707(a), alleging Franklin filed for bankruptcy in bad faith to avoid his contractual obligations. The Bankruptcy Court disagreed and denied Haak's motion, finding that Franklin had filed his bankruptcy petition in good faith, considering, among other things, the uncertainty of his future boxing career. Two months later, the Bankruptcy Court held that Franklin was not required to perform under the boxer-manager contract and ordered Haak to refrain from enforcing it.

Haak appealed the Bankruptcy Court's orders to this Court, and now seeks judicial notice of Franklin's postruling boxing matches, arguing they are relevant to whether Franklin filed his bankruptcy petition in bad faith. Alternatively, Haak seeks remand to the Bankruptcy Court for a second round to determine whether Franklin's filed for bankruptcy in bad faith. Franklin opposes both moves.

**I.**

Jermaine Maurice Franklin Jr. is a professional boxer who contracted Mark F. Haak to be his manager in December 2014. *In re Franklin*, No. 1:21-BK-20657, 2022 WL 903735, at *1 (Bankr. E.D. Mich. Mar. 28, 2022). The boxer-manager contract (the Contract) provides, in relevant part:

1. Employment of Boxer

    By this Agreement, Manager engages Boxer, and Boxer agrees for a period of [four years and six months] from the date of execution of this Agreement to render services exclusively for Manager in such boxing contests, exhibitions of boxing, and training exercise, whenever required by Manager, as Manager may from time to time direct.

2. Boxer's Compensation

    a. Manager will be paid 30% of all amounts derived by Boxer from any services Boxer may render under this Agreement.

    b. Manager hereby agrees to pay Boxer $10,000 at the time of the signing of this Agreement as a signing bonus.

    c. Manager further agrees that during the first year of the contract, Manager will pay Boxer the sum of $1,200 per month on or before the first day of each month, commencing February 1, 2015, continuing through 2015, and concluding January 1, 2016 (12 payments).

    d. Manager agrees that during the first year of the contract, Boxer will have no duty to pay any share of any proceeds that Boxer receives from any services that Boxer may render under this Agreement to Manager.

    e. Boxer acknowledges that Manger has no further responsibility to pay Boxer any money after the first year of the contract.

    f. Manager has no duty at any time to pay miscellaneous expenses . . .

3. Option

    Boxer hereby grants to Manager an unconditional option to extend this Agreement an additional two years immediately following the aforementioned five year period upon payment by Manager to Boxer the sum of [$25,000] on or before the expiration of the five year anniversary of this [Agreement].

    4. Manager's Efforts

    Manager agrees to use his best efforts to secure remunerative boxing contests for Boxer . . .

    6. Injuries/Extensions

    If Boxer is unable or unwilling to box due to injuries, substance abuse, or any other reason, this Agreement is automatically extended for a period of time equal to the amount of time Boxer is/was unable or unwilling to box.

    7. Exclusivity of Contract

    Boxer agrees that Boxer will not during the continuance of this Agreement take part in any boxing contests or other exhibitions, perform or otherwise exercise Boxer's talent in any manner or place, except as directed by Manager, and shall not allow Boxer's name to be used in any commercial enterprise without obtaining the prior, express, and written permission of Manager so to do . . .

    14. Entire Agreement

    This Agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent incorporated in this Agreement . . .

Exhibit E, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. Aug. 6, 2021), ECF No. 32 at 45–47. The arrangement was acceptable for many years, during which Haak "paid roughly $300,000 to advance Franklin's career," despite having no contractual obligation to do so. *Franklin v. Haak*, 499 F. Supp. 3d 379, 385 (E.D. Mich. 2020). But on August 10, 2018, Franklin "sent an email to [Haak] through the email account of his mother Andrea Lamar. Franklin claimed that the [Contract] was unconscionable and illegal under Pennsylvania law and requested mutual recission." *Id.* at 386. Notably, although Franklin sought recission of the Contract, there was no accompanying tender of restitution. *Id.* Five months later, Franklin sought judicial confirmation of his termination of the Contract in this Court. *Id.* at 387. Haak opposed Franklin's action and filed a counterclaim in September 2019 seeking a declaratory judgment that Franklin could not

unilaterally terminate the contract and that it remained in effect. *Franklin v. Haak*, No. 1:19-cv-10137 (E.D. Mich. Sept. 26, 2019), ECF No. 27. Haak exercised his "unconditional option," Exhibit E, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. Aug. 6, 2021), ECF No. 32 at 45–47, to extend the duration of the Contract for two years by paying Franklin $25,000, but the $25,000 sum was held in escrow pending Franklin's appeal. *Franklin v. Haak*, 499 F. Supp. 3d 379, 395 (E.D. Mich. 2020).

This Court ruled in favor of Haak and calculated the remaining days left on this Contract.[1] *Id.* Haak believed that this calculation was incorrect and filed an appeal with the Sixth Circuit, which remains pending.[2] Meanwhile, Franklin petitioned this Court to release the $25,000 deposit to him since he did not file an appeal. *Id.* This Court entered an indicative ruling allowing the release of the funds, and the parties stipulated to this arrangement. *Franklin v. Haak*, No. 1:19-CV-10137, 2021 WL 1811556 (E.D. Mich. May 6, 2021), ECF No. 81.

On May 28, 2021, the Parties submitted a Stipulated Order of Satisfaction to this Court representing that "Franklin had received the [$25,000] via ACH transfer and the funds have cleared in Franklin's account." ECF No. 84 at PageID.1172. On June 3, 2023, this Court signed and entered the Stipulated Order declaring that Haak had "satisfied" his obligations. *Id.* at PageID.1173. One day after the Stipulated Order was entered, Franklin filed a petition for Chapter 7 bankruptcy relief in the U.S. Bankruptcy Court for the Eastern District of Michigan. Petition, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. June 4, 2021), ECF No. 1.

---

[1] Notably, according to this Court's calculations, the Contract expired on March 6, 2023 under this Court's November 2020 Judgment. If the Sixth Circuit agrees with Haak as to the number of days remaining on the Contract, it will have expired on September 24, 2023.
[2] *Franklin v. Haak*, No. 21-1027 (6th Cir. July 9, 2021), ECF No. 29 ("[T]his appeal is held in abeyance until such time as the automatic stay provisions of 11 U.S.C. § 362 are lifted or otherwise terminated.").

Under the Bankruptcy Code, 60 days after a debtor files for Chapter 7 bankruptcy, all "executory contracts" are "deemed rejected" unless the trustee affirmatively assumes such a contract. *See* 11 U.S.C. § 365(d). By "rejecting" the contract, the debtor is merely breaching the contract and opening the estate up to a prepetition claim for beach of contract. *See* 11 U.S.C. § 365(g)(1) ("[T]he rejection of an executor contract . . . constitutes a breach of such contract . . . immediately before the date of the filing of the petition"). If, on the other hand, the executory contract is "assumed," then the debtor is liable for the full performance of the assumed contract, and any bankruptcy-court proceedings have no impact on the force of the contract. *In re Level Propane Gases, Inc.*, 297 B.R. 503, 507 (Bankr. N.D. Ohio 2003) (citing 11 U.S.C. § 365(b)).

But what is an executory contract? Noticeably undefined in the Bankruptcy Code, the question has sparked decades of debate and scholarship. *See generally*, Jay Lawrence Westbrook & Kelsi Stayart White, *The Demystification of Contracts in Bankruptcy*, 91 AM. BANKR. L.J. 481 (2017) (discussing how the changing tests for "executoriness" have caused confusion and proposing reform to streamline the inquiry); *see also In re: Drexel Burnham Lambert Group*, *Inc.,* 138 B.R. 687, 690 (Bankr. S.D.N.Y. 1992) ("[I]n no area of bankruptcy has the law become more psychedelic than in the one titled 'executory contracts.'"). Perhaps the most widely applied test for executoriness is Professor Vern Countryman's "material breach" test,[3] which states that a contract is executory only if both sides still owe obligations under the contract such that the failure to perform those obligations will constitute a material breach and relieve the other party of its performance. Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV.

---

[3] Though Countryman's material breaach test was clarifying when it was first introduced, some scholars believe the test—or the bankruptcy code—should be updated, as the "unfortunate result of the case law applying the material breach test" is that it excludes nonexecutory contracts from the bankruptcy estate. Jay Lawrence Westbrook & Kelsi Stayart White, *The Demystification of Contracts in Bankruptcy*, 91 AM. BANKR. L.J. 481 (2017).

439, 460 (1973); *see also Mission Prod. Holdings, Inc. v. Tempnology, LLC,* 139 S. Ct. 1652 (2019) ("A contract is executory if 'performance remains due to some extent on both sides.'" (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522, n. 6 (1984))). In sum, executory contracts are "both a potential asset and a potential liability of the debtor." *In re Ortiz*, 408 B.R. 755, 763 (C.D. Cal. 2009).

Assuming the Contract was an executory contract, Franklin filed a Motion to Enforce Rejection of Boxer/Manager Contract in August 2021. Motion, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. Aug. 6, 2021), ECF No. 32. The Bankruptcy Court held a hearing on Franklin's Motion in September 2021, and directed the Parties to submit supplemental briefing addressing what effect, if any, rejection of an executory contract has if a bankruptcy petition is ultimately dismissed. *See In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. Sept. 24, 2021; Sept. 30, 2021), ECF Nos. 96; 99.

While Franklin's Motion to Enforce was pending, Haak took the offensive on October 12, 2021, and filed two documents in the Bankruptcy Court. First, he initiated an adversary proceeding against Franklin by filing a five-claim Complaint against him.[4] Complaint, *Haak v. Franklin*, No. 21-02032 (Bankr. E.D. Mich. Oct. 12, 2021), ECF No. 1. In his Complaint, Haak puts forward five different theories under which he alleges Franklin's "obligations under the Boxer-Manager Contract are excepted from discharge." *Id.* at 10–16. Second, Haak filed a motion to dismiss Franklin's bankruptcy case for cause under 11 U.S.C §707(a), alleging Franklin filed his bankruptcy petition in bad faith. *In re Franklin*, No. 1:21-BK-20657, 2022 WL 210032, at *1 (Bankr. E.D. Mich. Jan. 24, 2022).

---

[4] The adversary proceeding was stayed on August 30, 2022, because the Parties agreed that this appeal has "the potential of rendering the [] adversary proceeding moot." Order, *Haak v. Franklin*, No. 21-02032 (Bankr. E.D. Mich. Oct. 12, 2021), ECF No. 52.

- 6 -

On January 24, 2022, the bankruptcy court denied Haak's motion for dismissal after evaluating the case under the factors outlined in *In re Zick*, 931 F.2d 1124 (6th Cir. 1991), to assess whether Franklin's bankruptcy case lacked good faith. *In re Franklin*, No. 1:21-BK-20657, 2022 WL 210032, at *9 (Bankr. E.D. Mich. Jan. 24, 2022). The bankruptcy court concluded that it did "not find Mr. Franklin's case to be odor free, but there [was] not enough odor to warrant dismissal of [his] case." *Id.* at *10.

Ten days later, having determined that Franklin's Petition would not be dismissed, the Bankruptcy Court issued a bench opinion holding that the contract was executory, *see* Hrg. Transcript, *Haak v. Franklin*, No. 21-02032 (Bankr. E.D. Mich. Feb.14, 2022), ECF No. 24 at 16–23, and Haak and Franklin stipulated to the entry of an order granting in part and denying in part Franklin's Motion to Enforce Rejection of Boxer/Manager Contract. Order, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. Feb. 3, 2022), ECF Nos. 153, 154. The stipulated order declared that the Contract had been rejected under 11 U.S.C. § 365(d)(1) but noted that Franklin "may file a new motion seeking" enforcement of the rejection. *Id.* By officially rejecting the executory contract,[5] Franklin opened the door for Haak to file a prepetition breach of contract claim for which damages are determined according to the relevant state law governing the contract. 11 U.S.C. § 365(g)(1). But the deadline for Haak to file a proof of claim was three months earlier. *See* Notice, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. July 28, 2021), ECF No. 26-2 ("Creditors who

---

[5] Notably, the practical result for both Franklin and Haak is the same regardless of whether the contract is executory. *See In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 276 (Bankr. S.D.N.Y. 2013) ("If the contract is executory and the debtor rejects it, the non-debtor party is left with a pre-petition unsecured claim for breach of contract. If, on the other hand, the contract is not executory and the debtor chooses not to perform, the non-debtor party gets the same pre-petition claim for breach of contract." (citations omitted)). As Bankruptcy Judge Stuart M. Bernstein noted, "the time expended searching for executorinesss can be spent more fruitfully doing almost anything else." *Id.*

wish to share in any distribution of funds must file a proof of claim with the clerk of the bankruptcy court . . . on or before[] October 26, 2021[.] Creditors who do not file a proof of claim on or before this date will not share in any distribution from the debtor's estate.").

The next day, Franklin filed his Second Motion to Enforce Rejection of Boxer/Manager Contract Under 11 U.S.C. § 365(d)(1) and FED. R. BANKR. P. 6006(a)." Motion, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. Feb. 4, 2022), ECF No. 156. Franklin sought enforcement of the rejection of the contract in the form of a court order directing Haak to "stop maintaining that '[he] is entitled to pursue a negative injunction against Franklin for violation of the contract's **_exclusivity_** provisions.'" *Id.* (emphasis in original) (quoting Response, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. August 19, 2021), ECF No. 49).

On April 12, 2023, the Bankruptcy Court granted Franklin's Second Motion and "ordered that [Franklin] is not required to perform the Contract . . . including any exclusivity, payment, or other obligations owed to Mr. Haak under the Contract, effective June 4, 2021. Mr. Haak shall not attempt to enforce any exclusivity provisions, demand any payment from purse, nor manage [Franklin] nor interfere with his management." Order, *In re: Franklin*, No. 21-20657 (Bankr. E.D. Mich. April 12, 2022), ECF No. 171.

Fifteen days later, Haak filed a notice of appeal in this Court. ECF No. 1. According to Haak, the Bankruptcy Court erred in denying his Motion to Dismiss, in granting Franklin's First Motion to Reject in part, and in granting Franklin's Second Motion to Reject. ECF No. 7 at PageID.1102.

While Haak's appeal was pending in this Court, Franklin sought to dismiss Haak's adversary proceeding, but the bankruptcy court denied his motion. Opinion, *Haak v. Franklin*, No. 21-02032 (Bankr. E.D. Mich. Aug. 24, 2022), ECF No. 49. One week later, Haak's adversary

proceeding was stayed until this appeal was decided, as the outcome of this appeal could moot the adversary proceeding. Order, *Haak v. Franklin*, No. 21-02032 (Bankr. E.D. Mich. Aug. 30, 2022), ECF No. 52. Notably, the outcome of the Haak's adversary proceeding could moot the contested issues here, as well.[6]

Haak now seeks judicial notice of Franklin's boxing matches that occurred after the bankruptcy court's ruling or a remand to the bankruptcy court to consider these matches under the *Zick* factors. ECF No. 15. Franklin opposes both requests. ECF No. 16.

## II.

As a threshold matter, this Court must determine if it has jurisdiction to review the Bankruptcy Court's order dismissing Haak's Motion to Dismiss.

## A.

The district court sits as an appellate court when reviewing decisions of the Bankruptcy Court. 28 U.S.C. § 158. Parties may appeal by right from "final judgments, orders, and decrees" of bankruptcy courts "in cases and proceedings." 28 U.S.C. § 158(a). Congress's use of the word "proceedings" in § 158(a) makes bankruptcy-court orders immediately appealable "if they finally dispose of discrete disputes within the larger [bankruptcy] case."[7] *Bullard v. Blue Hills Bank*, 575

---

[6] Haak's Complaint asserts five theories of nondischargability, *see* Complaint, *Haak v. Franklin*, No. 21-02032 (Bankr. E.D. Mich. Oct. 12, 2021), ECF No. 1 at 10–16. A determination of nondischargability would mean Haak's claim for breach of contract would be "exempt from the discharge, and [he could] go after [Franklin's] postpetition assets." Stephen C. Behymer, *Not Interested? A Trustee Lacks "Party in Interest" Standing to Move for an Extension of the Nondischargeability Bar Date on Behalf of Creditors*, 82 FORDHAM L. REV. 937, 950 (2013) (citing 4 COLLIER ON BANKRUPTCY ¶ 523.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009), and 11 U.S.C. § 523).

[7] Bankruptcy-court proceedings differ from traditional litigation in that bankruptcy cases involve "an aggregation of individual controversies" that exist independent of the larger bankruptcy case. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020).

U.S. 496, 501 (2015) (quoting *Howard Delivery Srv., Inc. v. Zurich Am. Ins.*, 547 U.S. 651, 657 n.3 (2006)).

When a bankruptcy-court order is appealed, the bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed *de novo*. *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 935–36 (6th Cir. 2010).

**B.**

This Court has jurisdiction over Haak's appeal. Haak filed his notice of appeal 15 days after the Bankruptcy Court's "Order Granting Debtor's Second Motion to Enforce Rejection of Boxer/Manager Contract Under 11 U.S.C. § 365(d)(1) and FED. R. BANKR. P. 6006(a)." ECF No. 1 at PageID.7–8. This Order determined that Franklin was "not required to perform the Contract . . . including any exclusivity, payment, or other obligations owed to Mr. Haak under the Contract." *Id.* at PageID.8. It also directed Haak to refrain from enforcing any provisions of the Contract. *Id.* In that way, the Order finally disposed of the "discrete dispute" between Franklin and Haak in the core bankruptcy proceeding, making it a final order. *In re Murray Energy Holdings Co.*, 640 B.R. 558, 560 (B.A.P. 6th Cir. 2022); *see also* 28 U.S.C.§ 158 (authorizing parties to appeal "final judgments, orders, and decrees" of the bankruptcy court to the district court); *In re Franklin*, No. 21-20657-DOB, 2022 WL 903735, at *5 (Bankr. E.D. Mich. Mar. 28, 2022) (acknowledging that Haak may appeal the Bankruptcy Court's decision).

This Court's jurisdiction over Haak's appeal includes jurisdiction to review all nonfinal orders issued by the bankruptcy court in the discrete dispute. *In re Blasingame*, 598 B.R. 864, 868 (B.A.P. 6th Cir. 2019) (quoting *In re Midway Motor Sales, Inc.*, 407 B.R. 442 (B.A.P. 6th Cir. 2009)). Thus, the Bankruptcy Court's Order denying Haak's Motion to Dismiss Franklin's Petition was a nonfinal order that is now subject to appellate review in this Court.

Franklin argues that the Order denying Haak's Motion to Dismiss was a "final order" that was "*locked in*," and thus Haak did not timely appeal it, ECF No. 13 at PageID.1211 (emphasis in original). But Franklin's argument mischaracterizes the law regarding final orders in bankruptcy courts. In the Sixth Circuit, a bankruptcy-court order is immediately appealable under 28 U.S.C. § 158(a)(1) if it was (1) entered in a proceeding and (2) terminated that proceeding. *See In re Jackson Masonry, LLC*, 906 F.3d 494, 497–98 (6th Cir. 2018), *aff'd sub. nom. Ritzen Grp.*, 140 S. Ct. 582 (2020).[8] The Bankruptcy Court's January 2022 Order denying Haak's Motion to Dismiss Franklin's Chapter 7 proceeding did not terminate the proceeding, nor did it finally settle the dispute between Franklin in Haak. Thus, it was not immediately appealable, so Franklin's argument that it is untimely lacks merit.

Franklin also argues that because "[Haak's] Notice of Appeal only identifies and attaches the Second Rejection Order," ECF No. 13 at PageID.1209, this Court may not review the January 2022 nonfinal order. But, as discussed, "[n]onfinal orders merge with the final judgment in a case and may be appealed by filing a timely notice of appeal of the final judgment." *In re Midway Motor Sales, Inc.*, 407 B.R. 442 (B.A.P. 6th Cir. 2009). And, to the extent Franklin argues that Haak's failure to attach the January 2022 order to his notice of appeal is a fatal procedural mistake that deprives this Court of jurisdiction, ECF No. 13 at PageID.1209–11, he is incorrect. The Federal Rules of Bankruptcy Procedure make clear that "[a]n appellant's failure to take any step *other than* the timely filing of a notice of appeal *does not* affect the validity of the appeal, but is ground only for the district court or BAP to act as it considers appropriate, including dismissing

---

[8] The Supreme Court in *Ritzen Group* held that "a bankruptcy court's order unreservedly denying relief form the automatic stay constitutes a final, immediately appealable order under § 158(a)." *Ritzen Grp.*, 140 S. Ct. at 587. Importantly, a motion for relief from an automatic stay is a *discrete dispute* initiated within a bankruptcy case. *See* FED. R. BANKR. P. 4001(a)(1). A motion to dismiss is not such a discrete dispute.

the appeal." FED. R. BANKR. P. 8003(a)(2). And dismissal is not appropriate if the appellant's procedural mistake is harmless error that does not prejudice the other party. *See McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985) ("In considering the impact of technical errors upon the sufficiency of a notice of appeal, the Supreme Court has repeatedly emphasized that absent a showing of prejudice such errors are to be treated as harmless." (citing *Foman v. Davis*, 371 U.S. 178 (1962))). Here, Haak timely filed his notice of appeal, and, even if his failure to attach the January 2022 order to the notice is a procedural defect, it does not prejudice Franklin. Under the merger principle, Haak's notice of appeal put Franklin on notice that all previously issued nonfinal orders were included in his appeal. And, on May 10, 2022, Haak filed his statement of issues which *surely* put Franklin on notice that the bankruptcy court's order denying his motion to dismiss was included in the appeal. At bottom, as much as he tries, Franklin cannot successfully argue that he was prejudiced.

In sum, this Court has jurisdiction over Haak's appeal of all three orders that, together, dispose of the discrete dispute within the core bankruptcy proceeding between him and Franklin. Thus, this Court will proceed to the merits of Haak's Motion for Judicial Notice.

### III.

Haak's Motion seeks judicial notice of Franklin's postruling boxing matches, which he argues are relevant to the analysis applied to his Motion to Dismiss. He also seeks an order remanding the case to the bankruptcy court for further consideration. Both requests will be addressed in turn.

### A.

Federal courts may take judicial notice of adjudicative facts, which are relevant facts that pertain to the specific case and parties before the court. *Toth v. Grand Trunk R.R.*, 306 F.3d 335,

349 (6th Cir. 2002) (citing FED. R. CIV. P. 201). This Court may take judicial notice of such facts if they are not subject to reasonable dispute and are capable of accurate determination from sources that cannot reasonably be questioned. *Downing v. Ford Motor Co.*, No. 18-1335, 2018 WL 4621955, at *1 (6th Cir. Sept. 24, 2018).

Franklin's boxing matches are adjudicative facts. He fought on November 26, 2022, on April 1, 2023, and on July 15, 2023. The matches have been widely reported. *See, e.g.*, Jake Donovan, *Jermaine Franklin Dominates Isaac Munoz over Ten Rounds, Ends Two-Fight Skid*, BOXINGSCENE (July 15, 2023, 9:58 PM), https://www.boxingscene.com/jermaine-franklin-dominates-isaac-munoz-over-ten-rounds-ends-two-fight-skid--176176 [https://perma.cc/8F2Y-WJA9]; *Anthony Joshua: British Heavyweight To Make Comeback Against Jermaine Franklin*, BBC (Feb. 6, 2023), https://www.bbc.com/sport/boxing/64542479 [https://perma.cc/KHH8-722K]; Nick Parkinson, *Dillian Whyte Gets Majority Decision over Jermaine Franklin*, ESPN (Nov. 27, 2022, 7:10 PM), https://www.espn.co.uk/boxing/story/_/id/35116777/dillian-whyte-gets-majority-decision-jermaine-franklin [https://perma.cc/XGQ7-4UUF]. The matches have been announced by Franklin himself. Jermaine Franklin (@ JermaineFrankl6), TWITTER, https://twitter.com/JermaineFrankl6 (last visited September 28, 2023) [https://perma.cc/AK6P-X6SL]. And more importantly, the matches have been statutorily preserved by BoxRec— boxing's official recordkeeper under the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301(3). *See* Jermaine Franklin Jr, BOXREC (2023), https://boxrec.com/en/box-pro/716569 [https://perma.cc/MF7T-WGTF]; *ABC Minutes Las Vegas, Nevada 28th Annual Association of Boxing Commissions Conference*, ASS'N BOXING COMM'NS. (Aug. 1–3, 2016), http://www.abcboxing.com/wp-content/uploads/2016/10/2016_minutes.pdf [https://perma.cc/XJ6A-UCY6]. The accuracy of BoxRec's information about Franklin's boxing

history has been previously recognized by this Court. *See Franklin v. Haak*, 499 F. Supp. 3d 379, 387 (E.D. Mich. 2020) (citing BoxRec). For these reasons, the boxing matches will be judicially noticed under Evidence Rule 201(b)(2). Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 13, 39–41 (2022) (explaining the reason and logic in taking judicial notice of public statements that are verified, preserved by statute, and recognized by the courts).

**B.**

With notice of Franklin's boxing matches, a remand is appropriate here. The bankruptcy court based its decision on the information available to it then, which did not include the postruling boxing matches. These matches, particularly facing former heavyweight boxing champions, are undoubtedly significant events that may impact Franklin's financial situation and future boxing income. *Neumann v. Neumann*, 684 F. App'x 471, 483 (6th Cir. 2017) ("When, as here, material facts underlying the [lower] court's judgment have changed during the appeal, appellate courts have remanded the case to the [lower] court for further proceedings."). Similarly, they show that Franklin may have misstated his financial status to succeed in bankruptcy, thus avoiding his obligations under the Contract with Haak. Indeed, Franklin's "short" boxing career was a substantial basis for the bankruptcy court's decision. *In re Franklin*, No. 1:21-BK-20657, 2022 WL 210032, at *7 (Bankr. E.D. Mich. Jan. 24, 2022).

Given "the changed circumstances" with the new, postruling boxing matches, the bankruptcy court must reevaluate Franklin's case under the *Zick* factors. *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 693 (6th Cir. 2022) (quoting *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 824 (6th Cir. 2012)). Indeed, bankruptcy courts must carefully consider whether a bankruptcy case was filed in good faith and that egregious cases warrant dismissal for cause. *See* 11 U.S.C. §

707(a). Therefore, a remand is warranted to afford the bankruptcy court an opportunity to examine the impact of these new matches on Franklin's financial situation and overall good faith in filing for bankruptcy, and to consider how the adversary proceeding might impact the issues disputed by the Parties in this appeal.

### III.

Accordingly, it is **ORDERED** that Appellant Mark F. Haak's Motion for Judicial Notice or Remand, ECF No. 15, is **GRANTED**.

Further, it is **ORDERED** that Appellee Jermaine M. Franklin's boxing matches on November 26, 2022, on April 1, 2023, and on July 15, 2023, are **JUDICIALLY NOTICED**.

Further, it is **ORDERED** that this case is **REMANDED** to the Bankruptcy Court for *de novo* consideration in light of this new information. The Bankruptcy Court is **DIRECTED** to reassess the *Zick* factors in the context of the additional boxing matches and determine whether Franklin's bankruptcy filing lacks good faith.

**This is a final order and closes the above-captioned case**.

Dated: September 28, 2023                    s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge